

**U.S. Department of Justice**

*United States Attorney*
*District of Maryland*

*Brandon Moore*        *Suite 400*        *DIRECT: 410-209-4826*
*Assistant United States Attorney*        *36 S. Charles Street*        *MAIN: 410-209-4800*
*Brandon.Moore@usdoj.gov*        *Baltimore, MD 21201-3119*        *FAX: 410-962-0717*

April 21, 2020

Hon. Deborah L. Boardman
United States Magistrate Judge
United States Courthouse
101 W. Lombard Street
Baltimore, MD 21201

      Re:    *United States v. Sonny Spencer*, Crim. No. GLR-19-0400
                Supplemental Response to Defendant's Motion for a Detention Hearing and
                Release

Dear Judge Boardman:

      We write in compliance with the Court's paperless order directing the Government to respond to Defendant Sonny Spencer's most recent filing. *See* ECF Nos. 74, 75. In the filing, Spencer relies on the April 19, 2020 opinion issued by United States District Judge Kollar-Kotelly ordering the D.C. Jail and the Central Treatment Facility ("CTF") to take particular remedial steps in light of COVID-19. *See Banks v. Booth*, Civil No. 20-849 (D.D.C.), ECF Nos. 48, 49.

      His reliance on *Banks*, however, is misplaced for several reasons. First, Spencer trumpets the deficiencies outlined in the *Banks* Order while ignoring that the court ordered enhanced measures to address those concerns. Spencer also overlooks that Judge Kollar-Kotelly denied the specific relief he seeks here—the release of any DOC inmates. Second, even if the enhanced measures prove unhelpful, Spencer's circumstances, at best, warrant transfer to a different facility or the order of more enhanced measures to decrease the risk, as other judges in this District have recognized. Finally, Spencer's filing pays no attention to any of the other § 3142 factors that support his detention, thus elevating the risk of exposure above all other factors this Court must consider. That is not the law. For those reasons, his motion should be denied.

**I.**    **While Judge Kollar-Kotelly Cited Deficiencies, She Also Ordered Measures to Address Those Concerns and Declined to Release Any Inmates.**

      Nothing in the *Banks* Order merits Spencer's release. The Government acknowledges that Judge Kollar-Kotelly found that many of the measures that D.C. Department of Corrections ("DOC") prescribed by policy have not been properly implemented (at least as of the time independent inspectors visited the facility on three occasions between April 10 and April 12), that further measures are needed, and that further education of staff and inmates regarding the existing measures is necessary. *See generally Banks*, Mem. Op., ECF No 49.

Important here, however, Judge Kollar-Kotelly did not conclude that current conditions necessarily warranted any particular inmate's release, as Spencer so urges here. *See id.* at 26 ("The Court is not ordering the release of any inmates currently detained in DOC facilities.").

Indeed, as Judge Kollar-Kotelly recognized, "COVID-19 poses an unprecedented challenge and the precautionary measures taken by [DOC] are rapidly evolving." *Id.* at 16; *see also id.* at 15 (recognizing that DOC's "response to this sudden and unprecedented pandemic is ongoing"). As such, rather than order release, Judge Kollar-Kotelly issued an extensive order to remediate the deficiencies in DOC's implementation of its policies, including:

- ensuring proper triage process for sick call requests;

- ensuring medical staff are promptly informed of inmates who present with symptoms of COVID-19;

- providing better documentation of sick calls and the outcomes of same;

- ensuring proper monitoring of cell restrictions;

- ensuring appropriate housing for inmates in quarantine;

- consulting with public health professionals regarding strategies that can be implemented to strengthen COVID-19 related education;

- conducting additional staff training on use of thermometers;

- providing consistent and reliable access to legal calls;

- ensuring proper social distancing;

- ensuring proper use and communication to staff regarding use of PPE;

- strengthening the environmental health and safety program;

- assessing whether any additional security staff are needed to provide appropriate supervision for social distancing; and

- ensuring that all inmates, including those on isolation, have access to confidential, unmonitored legal calls of a duration sufficient to discuss legal matters.

In addition, on April 17, 2020, DOC Director Quincy L. Booth issued a memorandum to all employees and contractors entitled, "Reminders and Updated COVID-19 Policies and Procedures" (attached here as Exhibit 1). Director Booth's memorandum, which directly addresses many of the concerns raised by the independent inspectors in *Banks*, both reminds staff of existing procedures and provides several updated procedures, including the following:

- Social Distancing:  Correctional officers must enforce social distancing at all times. There shall be multiple daily announcements over the public address system reminding staff and resident of the need for social distancing.  Strict limits also are placed on the number of people who can be out of their cells at one time (generally no more than six).  Group activities shall continue to be suspended during the emergency period.

- Residential Out of Cell Time:  Inmates are restricted to one hour out of their cells each day, and there will be PA announcements reminding inmates of this rule.

- Personal Protective Equipment:  DOC shall conduct refresher courses on the proper use of PPE for staff during roll call on each shift and such courses shall be documented.  DOC's medical staff and sick call staff shall visit DOC housing units to refresh staff and residents on PPE use, COVID prevention, and how to submit sick call slips for medical units, and such refreshers shall be documented.

- Isolation Units:  All residents in isolation shall be allowed to shower once per day, shall be allowed 30-minute legal calls per day on an unmonitored "rolling phone" that will be transported to the inmate's cell, and shall be provided tablets with entertainment and education content, as well as activity packets.

- Unit Common Area and Cell Cleaning:  At the beginning of each shift, correctional officers shall document the amount of cleaning supplies available and report any shortages, provide cleaning products on towels or paper towels for inmates to clean cells, verify and document that common areas are cleaned, and post listings of cleaning products available to residents in each housing unit.

- Linen and Laundry Exchanges:  Each week, DOC shall provide residents with fresh clothing, undergarments, and linens, and collect used items.

- Contractor and Staff Screening and Hygiene:  All staff and contractors entering DOC facilities will continue to undergo a COVID-19 screening, including temperature checks and answering questions related to COVID-19 symptoms. Staff conducting the screenings will be re-trained in the use of thermometers. Following the screening, staff shall properly wash their hands before entering the facility.  Non-essential visitors will be excluded from the facility.  Any staff that have been in sustained, close contact with someone who has tested positive will be informed.

- Access to Legal Calls:  All residents shall be allowed 30-minute legal calls daily. DOC staff will also cooperate to facilitate incoming calls from attorneys.

- Medical Care:  If DOC staff observe an inmate exhibiting symptoms of COVID-19, staff shall direct that person to medical staff.

- Additional Measures: DOC is also working to make better use of single cells where possible, is increasing staff through the Medical Reserve Corps to assist with provision of medical care and temperature checks, is trying to obtain additional tablets for residents to use during the duration of the emergency period, is increasing monitoring of inmates placed on quarantine, and will request deployment of mobile COVID-19 testing within DOC facilities when it becomes available.

Spencer does not allege that Judge Kollar-Kotelly's or the DOC's enhanced measures are insufficient to address the needs of detainees generally or of Spencer in particular. Rather, Spencer simply recounts the deficiencies identified by Judge Kollar-Kotelly that DOC has been ordered to remediate under the close supervision of the United States District Court for the District of Columbia. This information does not merit Spencer's release.

Indeed, Judge Kollar-Kotelly's Order specifically denied the *Banks* plaintiffs' request for the release of detainees as not called for by the record. *See, e.g., Banks*, ECF No. 49 ("The Court is not ordering the release of any inmates currently detained in DOC facilities."). The *Banks* Order instead imposed specific remedies for the specific deficiencies noted in that case. As such, nothing in the *Banks* Order outweighs the other § 3142 factors that call for Spencer's continued detention.

**II.      Even Then, Other Options Would Be More Appropriate Than Release.**

Even if conditions at any given facility were insufficient to limit the risk of unreasonable exposure, the proper remedy—in light of the § 3142 factors justifying detention—is to order different conditions or transfer to a different facility, not release. Indeed, opinions by members of this Court have rejected wholescale release as an appropriate remedy for problems in the jails, and have favored remediation of any identified problems instead. *See United States v. Williams*, Crim. No. PWG-13-544 (D. Md.), ECF No. 94 (Order by Magistrate Judge Day) (recognizing that "[s]hould the unfortunate event occur, the correctional authorities have in place a plan of action that should not be summarily embraced or discarded. Nor does it follow that a presumption of release materializes without more details about the impact upon [the defendant] directly.").

And as Judge Chuang recognized, even "[i]f the conditions prove to be unacceptable, the solution for [the defendant] will be for the Court to require improvements to the conditions or to have him moved to another detention facility, not to order [the defendant] to be released into the community." *United States v. Cleckley*, TDC-18-344 (D. Md.), ECF No. 485 (Order by Judge Chuang). As such, at best, Spencer makes only a claim for transfer to a different facility, not release.

**III.     The Remaining § 3142 Factors Weigh Heavily in Favor of Detention.**

Tellingly, Spencer's filing ignores all of the § 3142 factors that weigh in favor of his continued detention. Nor does he attempt to rebut the presumption that no combination of conditions can ensure his appearance or the safety of the community. Again, Spencer led a drug shop that associated itself with numerous firearms—for protection and to build their brand online. Several recordings show Spencer and his co-defendants engaging in drug transactions, and

4

evidence recovered from their homes and social media confirm their criminal conduct. Moreover, despite his youth, Spencer is already a career offender. He has been convicted of at least one violent crime (which appeared to involve a firearm) and has never successfully complied with the conditions of his release—having even committed this offense while on parole. All of these factors, compounded by the presumption, weigh in favor of detention. They simply are not trumped by Spencer's claims.

      For all of those reasons, Spencer is not a candidate for release, and his motion should be denied.

                                  Very truly yours,

                                  Robert K. Hur
                                  United States Attorney

                                  _____/s/_____

                                  Brandon Moore
                                  Clinton Fuchs
                                  Assistant United States Attorneys

Filed on CM/ECF on April 21, 2020.